UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO:    1:24-cv-21474

Fast Response Marine Towing and Salvage, LLC,
A Florida Corporation,

       Plaintiff,

v.

MCL Fund Investment LLC, *in personam*, and
M/V AZZURRA, a 1999 AZIMUT, 58-foot,
vessel bearing hull identification number XAX580B3A999,
Her engines, tender, tackle, equipment,
Furnishings and appurtenances, *in rem*,

       Defendants,
_____/

## AMENDED VERIFIED COMPLAINT
(To correct typographical error in Defendant's name and numbering)

Plaintiff, Fast Response Marine Towing and Salvage, LLC ("FRT" or "Plaintiff'), hereby file this Verified Complaint in Admiralty against the M/V AZZURRA, a 1999 AZIMUT, 58-foot inch, vessel bearing hull identification number, her engines, tender, tackle, equipment, furnishings and appurtenances, in rem, (the "Vessel") and MCL Investment LLC, a Florida Corporation and states as follows:

1. This is an action in admiralty and maritime claim within the jurisdiction of this Court pursuant to 28 U.S.C. § 1333, and a claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and pursuant to Supplemental Rule C and Local Admiralty Rule C as hereafter more fully appears.

.

2. Plaintiff, FRT, is a corporation organized and existing under the laws of the State of Florida and at all times material hereto doing business as a professional maritime salvage company in Broward County, Florida with its principal place of business in Broward County, Florida.

3. The Defendant Vessel, M/V AZZURRA, a 1999 AZIMUT, 58-foot, vessel bearing hull identification number XAX580B3A999, her engines, tender, tackle, equipment, furnishings and appurtenances is now or will be during the pendency of this action within the Southern District of Florida and within the jurisdiction of this Court.

4. The Defendant, MCL Fund Investment LLC, is a Florida Corporation and was the owner and operator of the M/V AZZURRA on December 27, 2023. On that date the M/V AZZURRA's owner was being represented by Juan Ignacio Paz Arboleda. Defendant MCL Fund Investment, LLC is located at 1091 Waterside Lane, Hollywood, Florida 33019.

5. Venue for this civil action is proper in the Southern District of Florida.

**FACTS COMMON TO ALL COUNTS**

6. On or about Captain Rafaello Giustini, an employee of FRT, received notice from the dockmaster stating that the M/V AZZURRA was sinking at her dock at Loggerhead Marina in Aventura, Florida. Captain Giustini responded to the call within fifteen minutes which was crucial in saving the vessel and the environment.

7. FRT had its salvage vessel respond to the scene at night at about 10:00 p.m. FRT's captain Rafaello Giustini observed that the M/V AZZURRA was taking on water in its engine room from an unknown source and the vessel was in danger of sinking. At the time of arrival on scene FMT observed that the AZZURRA's engine room was submerged. The M/V AZZURRA was in a marine peril and in danger of sinking and also ruining its marine diesel engines. A FRT professional salvor was able to use his equipment to pump out and dewater the engine room of the

M/V AZZURRA. The AZZURRA had about 12,000 gallons of water in its bilge upon FMT's arrival. There was approximately 740 gallons of fuel in its tank and approximately 5 gallons of oil in each motor. There was also oil in 5-gallon buckets floating and oil was recovered in the bilge before being discharged overboard with the bilge water by using absorbent pads. There was a danger that the AZZURRA would roll over due to the sea water filling the boat. The total time of the salvage took approximately four hours.

8. When on the scene the FMT personnel advised the owner's representative of the M/V AZZURRA that the situation was a salvage and that it would be handled as such. A Marsal Salvage from was signed by the company representative of the M/V AZZURRA. A copy of the form is attached as exhibit A.

## LOCAL ADMIRALTY RULE E(3) SPECIAL PLEADING REQUIREMENTS FOR SALVAGE ACTIONS

9. FRT utilized a professionally rigged salvage/rescue vessel which is a Boston Whaler 25' powered by twin 175 horsepower engines. The value of the FRT Boston Whaler vessel is and the equipment aboard the FRT boat was worth about $75,000.00 (dive gear, air bags, dewatering pumps and other salvage rigging). FRT utilized its dewatering pump for the salvage operation along with absorbent pads for the oil in the engine spaces.

10. Captain Rafaello Giustini, the FRT employee in charge of the salvage operation at the scene, is a licensed U.S. Coast Guard captain. Captain Rafaello Giustini arrived promptly at the scene and immediately began investigating the water intrusion and assessing the safest and most efficient way to dewater the boat and save its main engines, and perhaps the entire vessel. In accordance with Local Admiralty Rule E(3), Plaintiff attaches an exhibit listing all known salvors and persons believed to be entitled in the salvage as Exhibit B.

11.     Captain Rafaello Giustini first took a risk in going into the M/V AZZURRA that was taking on water from an unknown entry point, and then assisting in dewatering the boat's engine room and saving its engines and hull. He also was able to prevent the oil that was in 5-gallon buckets from being discharged into the marina which would have caused an environmental disaster.

12.     The M/V AZZURRA has a post casualty value of $375,000.00.

13.     FRT claims $59,500.00 for the salvage services rendered as fair and justified compensation.

14.     The M/V AZZURRA was rescued from further marine peril which included sinking and in fact FRT's salvage actions and promptitude resulted in the preservation of its marine diesel engines which would have been submerged and ruined if FRT had not acted quickly to dewater the vessel.

## COUNT I – FORECLOSURE OF A MARITIME LIEN FOR PURE VOLUNTARY SALVAGE

15.     FRT reasserts and realleges each and every allegation in paragraphs 1 through 19 above as if fully set forth at length herein.

16.     The M/V AZZURRA, at the time FRT came to her rescue and assistance, was in marine peril. Without FRT's actions, the vessel was in imminent danger of suffering additional damage, possibly sinking and becoming a AZZURRA loss. The M/V AZZURRA'S bilge pumps could not keep up with the sea water coming into her engine space. Additionally, if there was not prompt action from FRT, the diesel engines of the vessel would get flooded and ruined at great expense to the owner. There was also a great risk of marine pollution as there were 5-gallon buckets of oil floating in the bilge that were successfully recovered.

17.     FRT provided the salvage services voluntarily to MCL Fund Investment LLC.

18.     The services rendered by FRT were salvage services of a high order of merit. They were

furnished promptly, properly, efficiently, and skillfully under the conditions at the time.

19.     FRT's personnel and equipment were used to save M/V AZZURRA and keep her from suffering additional damage, possibly sinking and becoming a AZZURRA loss (most certainly her engines would have been ruined if submerged).

20.     FRT was successful in saving the M/V AZZURRA from the marine peril and danger to which it was exposed.

21.     Under the general maritime law of the United States of America, pure voluntary salvage services rendered to a vessel in peril give rise to a maritime lien. Accordingly, FRT enjoys maritime lien rights against the M/V AZZURRA and is entitled to foreclose said rights against the vessel.

WHEREFORE, Plaintiff prays:

    A.     That a warrant for the arrest of the M/V AZZURRA may issue and all persons claiming any interest in said vessel may be cited to appear and answer;

    B.     That said claim may be declared to be a valid lien against the vessel M/V AZZURRA, her engines, boilers, tackle, machinery, apparel and furniture under and by virtue of the acts of Congress of the United States of America and the general maritime law;

    C.     That said lien may be foreclosed and a judgment be entered in favor of the Plaintiff and against said vessel and vessel owner for the amount of its indebtedness, with interest, costs and expenses, and the M/V AZZURRA, including her engines, boilers, tackle, equipment, freights, gear, furnishings and appurtenances, etc. may be condemned and sold to pay the demands and the claims of the Plaintiff;

    D.     The Plaintiff has such other and further relief as it may be entitled to receive.

## COUNT II – FORECLOSURE OF A MARITIME LIEN FOR CONTRACT SALVAGE

22. FRT reasserts and realleges each and every allegation in paragraphs 1 through 19 above as if fully set forth at length herein.

23. The M/V AZZURRA, at the time FRT came to her rescue and assistance, was in marine peril. Without FRT's actions, the vessel was in imminent danger of suffering additional damage, possibly sinking and becoming a AZZURRA loss. At a minimum her engines would have been flooded and ruined.

24. The owner's representative of the M/V AZZURRA, Juan Ignacio Paz Arboleda, requested assistance from FRT. Juan Ignacio Paz Arboleda signed a Standard Form Marine Salvage Contract agreeing to compensate FRT for its salvage services on a "No Cure, No Pay" basis in accordance with the 1989 International Salvage Convention.

25. FRT rendered the subject salvage services to M/V AZZURRA at the captain's request.

26. The services rendered by FRT were salvage services of a high order of merit. They were furnished promptly, properly, efficiently and skillfully under the conditions at the time.

27. FRT's personnel and equipment were used to save M/V AZZURRA and keep her from suffering additional damage, possibly sinking and becoming a AZZURRA loss.

28. FRT was successful in saving the M/V AZZURRA from the marine peril and danger to which it was exposed.

29. Under the general maritime law of the United States of America, pure voluntary salvage services rendered to a vessel in a marine peril give rise to a maritime lien. Accordingly, FRT enjoys maritime lien rights against the M/V AZZURRA and is entitled to foreclose said rights against the vessel.

WHEREFORE, Plaintiff prays:

  A. That a warrant for the arrest of the M/V AZZURRA may issue and all persons claiming any interest in said vessel may be cited to appear and answer;

  B. That said claim may be declared to be a valid lien against the vessel M/V AZZURRA, her engines, boilers, tackle, machinery, apparel and furniture under and by virtue of the acts of Congress of the United States of America and the general maritime law;

  C. That said lien may be foreclosed and a judgment be entered in favor of the Plaintiff and against said vessel and vessel owner for the amount of its indebtedness, with interest, costs and expenses, and the M/V AZZURRA, including her engines, boilers, tackle, equipment, freights, gear, furnishings and appurtenances, etc. may be condemned and sold to pay the demands and the claims of the Plaintiff;

  D. The Plaintiff has such other and further relief as it may be entitled to receive.

## COUNT III – CLAIM FOR SALVAGE AGAINST MCL FUND INVESTMENT LLC, IN PERSONAM

30. FRT reasserts and realleges each and every allegation in paragraphs 1 through 19 above as if fully set forth at length herein.

31. Juan Ignacio Paz Arboleda of the vessel M/V AZZURRA requested assistance from FRT. Juan Ignacio Paz Arboleda signed a Standard Form Marine Salvage Contract agreeing to compensate FRT for its salvage services on a "No Cure, No Pay" basis in accordance with the 1989 International Salvage Convention.

32. FRT rendered the subject salvage services to M/V AZZURRA at the request of the owner's representative.

33. The salvage services were successful.

34. Pursuant to the general maritime law of the United States, MCL Fund Investment LLC, is liable, *in personam*, for the salvage services rendered by FRT to the M/V AZZURRA.

WHEREFORE, based on the foregoing, FRT requests the entry of final judgment, *in personam*, against MCL Fund Investment LLC for damages and the amount of the value of salvage services rendered by FRT to M/V AZZURRA, plus storage and arrest costs (including in custodia legis expenses) that FRT may be responsible for, attorney's fees incurred by FRT, plus costs and prejudgment interest and any other relief this Court deems appropriate.

Dated this 19th day of April 2024.

s/ Jacob J. Munch
JACOB J. MUNCH
E-mail: jake@munchandmunch.com
Florida Bar Number 376523
CATHERINE M. SAYLOR
E-mail: casey@munchandmunch.com
Florida Bar Number 115593
MUNCH and MUNCH, P.A.
600 South Magnolia Avenue – Suite 325
Tampa, Florida 33606
Ph: (813) 254-1557 / Fax: (813) 254-5172
*Attorneys for Plaintiff, Fast Response Marine*

## VERIFICATION OF CHARLES HANSEN

I am the manager of Fast Response Marine Towing and Salvage, a Florida Corporation. I declare and affirm I have read the foregoing Verified Complaint and am personally familiar with the events and circumstances herein and affirm, under the penalties of perjury, the truth and veracity of same by my own knowledge. The basis of my knowledge is talking with Captain Rafaello Giustini, the FRT salvage captain on the scene.

Pursuant to 28 USC § 1746, I solemnly declare under penalty of perjury that the foregoing is true and correct.

Executed on April 17, 2024.

Charles Hansen